**CHARLES J. LETTIERI ET AL. *v.* AMERICAN SAVINGS BANK ET AL.**

**AMERICAN SAVINGS BANK *v.* JOHN LETTIERI CORPORATION ET AL.**

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

1

Argued May 14—decision released August 5, 1980

*Joel J. Rottner,* with whom, on the brief, was *Jeffrey L. Williams,* for the appellants (plaintiffs in the first case and defendants in the second case).

*Charles N. Williams,* with whom, on the brief, was *Donald H. Clark,* for the appellee (named defendant in the first case and plaintiff in the second case).

PETERS, J. This case concerns the scope of the apparent authority of the president of a de facto corporation to encumber corporate property. The appeal results from the consolidation in the trial court of two related law suits arising out of the execution of a mortgage on property owned by the

John Lettieri Corporation (hereinafter the corporation) by Joseph Lettieri, the corporation's president, to the American Savings Bank (hereinafter the bank). In the first law suit,[1] Charles J. Lettieri, John Lettieri and other members of the Lettieri family sued to have the mortgage set aside; in the second suit, the bank sued Joseph Lettieri and the corporation[2] to foreclose the mortgage. Although other related matters were also litigated in the trial court, the principal issue there and on this appeal is whether the mortgage was executed without corporate authority. The trial court, *Spallone, J.,* found all of the issues in favor of the bank on both law suits. From the judgments thereafter rendered, the corporation, Charles Lettieri and John Lettieri have taken the present appeal.

The facts in this case reveal, on the part of both the corporation and the bank, patterns of conduct so informal as to border on the uncommercial. Neither party conducted its business affairs with the kind of customary business caution that normally attends transactions involving significant amounts of property.

The trial court's memorandum of decision, supplemented by those material facts as to which there is no dispute; see *Pandolphe's Auto Parts, Inc.* v.

---

[1] This suit was brought by Charles J. Lettieri, Anna M. Callano, John Lettieri, Helen Barthol and Theresa Scelza. The first count alleged that the bank's mortgage was invalid because it had been executed subsequent to a quitclaim deed of the property by the corporation to the named plaintiffs. The second count alleged lack of corporate authority. The third count, against Joseph Lettieri, alleged lack of corporate authority and conversion, and on this count the plaintiffs prevailed in the trial court. The fourth count alleged lack of corporate authority by virtue of the corporation's dissolution.

[2] The named plaintiffs in the first law suit joined this second suit as party defendants.

*Manchester,* 181 Conn. 217, 221, 435 A.2d 24
(1980); establishes the following: The John
Lettieri Corporation was incorporated in 1959 as
a closely held family corporation organized for the
purpose of managing family real estate for the
benefit of family members. The corporation has
had, since its inception, only four shareholders,
Joseph Lettieri, John Lettieri, Charles Lettieri and
John Scelza. At all relevant times, Joseph has been
the president and Charles the secretary, but Joseph
has always managed the corporation and has done
so without any accountability to the remaining
directors and shareholders. The corporation has
kept no books, no resolutions, no minutes of meet-
ings, has issued no stock certificates, has held no
formal annual meetings. The corporation failed to
file with the secretary of the state annual reports as
required by General Statutes §§ 33-298, 33-299.
Therefore, on April 10, 1962, the corporation was
dissolved by the secretary of the state through the
filing of a certificate of dissolution by forfeiture.
See General Statutes § 33-387 (b).[3] Nonetheless, it
has continued to maintain a checking account, to
hold real estate in its own name and to incur and pay
debts. As the trial court stated, this was a corpora-
tion that operated in total disregard of corporate
law and procedure.

The trial court expressly found that the corpora-
tion has allowed Joseph Lettieri to exercise broad
powers on its behalf. Joseph had, in the past,
transferred or mortgaged corporate property by

---

[3] Although the record does not affirmatively so indicate, the parties
and the trial court appear to have acted on the assumption that the
secretary of the state followed the procedure of dissolution specified
in General Statutes § 33-387 (b). Since that assumption is unchal-
lenged, we will do likewise.

signing documents as president. He was the manager in charge of the corporation's real estate, and he was authorized to sign corporate checks. He was permitted, on behalf of the corporation, to engage counsel, whose bills the corporation paid both before and after this transaction. Significantly, the corporation has even yet done nothing to relieve Joseph of his presidency.

The corporation acquired, in 1963, the Wethersfield property which Joseph mortgaged to the bank. Record title to this property remains in the corporation. In 1976, at approximately the same time that Joseph was negotiating the disputed mortgage, the corporation conveyed this property by an unrecorded quitclaim deed to the individual members of the Lettieri family. The bank's title search did not uncover this unrecorded deed, and the bank had no other knowledge, actual or constructive, that the property was not owned by the corporation.[4] The temporal proximity of the quitclaim deed to the mortgage transaction remains unexplained.

The bank's involvement with the mortgage transaction began early in 1976 when Joseph Lettieri approached the bank for a mortgage loan to enable him to buy a restaurant in Berlin. Although it was originally planned to procure a mortgage on the real estate on which the restaurant was located, this plan proved unfeasible. Joseph thereupon offered the bank instead a mortgage on the property of the

---

[4] The trial court denied the plaintiffs' claimed ownership rights in the mortgaged property, asserted in count one of their complaint, on this basis. Even though their quitclaim deed antedated the mortgage deed, the mortgagee's lack of knowledge entitled it to priority. General Statutes § 47-10. The plaintiffs have not appealed the judgment rendered against them on this count.

corporation in Wethersfield. The property was appraised by the bank at a value of $110,000, against a loan committal of $70,000. In the process of its credit investigation, the bank learned that the corporation had been legislated out of existence but made no further inquiry into its present status. The bank allowed Joseph to sign the mortgage note for the corporation in his capacity as corporate president on the basis of documentation that was, at the very least, highly questionable. The bank required Joseph to produce a corporate resolution, but accepted a resolution signed only by Joseph himself, carrying a seal that was visibly hand drawn. The bank took the word of the corporation counsel that this resolution adequately conveyed corporate authority. In its dealings with the proceeds of the mortgage loan, the bank was more careful. Although it knew that the proceeds of the loan were being used for the purchase of a restaurant by Joseph, it paid the proceeds over by a check made payable to the corporation. The remaining shareholders, however, had no knowledge of this loan.

There are no further findings of fact concerning the mortgage transaction, except for the conclusion, which necessarily underlies the judgment of foreclosure, that the mortgage note is in default. The trial court expressly refused to draw any inferences from the bank's knowledge that the proceeds of the loan were being used for the purchase of a restaurant by Joseph Lettieri. The court made no findings about the actual use of the proceeds, about the source of moneys for the mortgage instalments paid before default, or about the relationship between the restaurant business and the corporation's real estate investments. The parties in their briefs

demonstrate that there is no agreement between them on these not insignificant lacunae in the factual posture of the case.[5]

It is clear that the trial court heard extensive testimony and took under advisement numerous exhibits offered by the parties. On the basis of the record thus compiled, the court concluded that the corporation had clothed its president, Joseph Lettieri, with apparent authority. The court also concluded that the corporation was estopped to deny Joseph's apparent authority. Although we consider the case to be extremely close, we hold that the conclusions of the trial court, especially its fact-bound determination about Joseph's apparent authority, are not clearly erroneous. Practice Book, 1978, § 3060D.

## I

The basic principles that govern the authority of a corporate president to bind his corporation are not at issue. Corporate presidency per se does not confer inherent authority to commit the corporation. "The corporation is only liable for the acts of its president if it is shown that his acts are so related to his duties as president that they may reasonably be held to have been done in the prosecution of the business of the corporation and while he was acting within the scope of his employment." *Baptist* v. *Shanen,* 145 Conn. 605, 608–609, 145 A.2d 592 (1958); *Cohen* v. *Holloways', Inc.,* 158 Conn. 395, 406–407, 260 A.2d 573 (1969); *Perry* v. *Simpson*

---

[5] The record discloses no effort to have the trial court supplement its memorandum of decision. Practice Book, 1978, § 3082. On appeal to this court, the appellants have raised no issues with respect to the findings of fact but have limited their appeal to various claims of law.

*Waterproof Mfg. Co.,* 37 Conn. 520, 534 (1871). The liability of the corporation therefore depends upon whatever specific powers of agency have been conferred upon the president. See Kempin, "The Corporate Officer and the Law of Agency," 44 Va. L. Rev. 1273 (1958). In this case, all of the parties are in agreement that the authority conferred by the John Lettieri Corporation on Joseph Lettieri must be measured by the principles of apparent authority. No claim has been made that the corporation actually or impliedly authorized Joseph to encumber corporation property as security for a restaurant he intended to buy, nor has it been claimed that a small family-owned real estate corporation would inherently appear to a reasonable person to have authorized such an encumbrance. See Cross, Corporation Law in Connecticut, p. 284 (1972).

The principles that determine whether an agent has apparent authority are similarly not at issue. Apparent authority must be derived not from the acts of the agent but from the acts of his principal. "[T]he acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority." *Nowak* v. *Capitol Motors, Inc.,* 158 Conn. 65, 69, 255 A.2d 845 (1969); *Hollywyle Assn., Inc.* v. *Hollister,* 164 Conn. 389, 395–96, 324 A.2d 247 (1973); *Cohen* v. *Holloways', Inc.,* 158 Conn. 395, 407–408, 260 A.2d 573 (1969); *Lewis* v. *Michigan Millers Mutual Ins. Co.,* 154 Conn. 660, 665–66, 228 A.2d 803 (1967);

*Washington Cedar & Fir Products Co.* v. *Elliott,*
91 Conn. 350, 353, 100 A. 29 (1917); *Quint* v. *O'Connell,* 89 Conn. 353, 357, 94 A. 288 (1915). See
Seavey, Agency § 8 (1964); Restatement (Second),
Agency §§ 8, 27 (1958).

The issue of apparent authority is one of fact,
requiring the trier of fact to evaluate the conduct
of the parties in light of all of the surrounding cir-
cumstances. *Hollowyle Assn., Inc.* v. *Hollister,*
supra; *Lee* v. *Jenkins Bros.,* 268 F.2d 357, 370 (2d
Cir. 1959). Only in the clearest of circumstances,
where no other conclusion could reasonably be
reached, is the trier's determination of fact to be
disturbed. *McLaughlin* v. *Chicken Delight, Inc.,*
164 Conn. 317, 323–24, 321 A.2d 456 (1973).

It is useful in applying the principles of apparent
authority to this case to consider separately the
two elements of (1) holding out by the principal
and (2) good faith reliance by the third party seek-
ing to bind the principal. With regard to the first
element, there was overwhelming evidence to sup-
port the trial court's conclusion that the corporation
had left Joseph in virtually unfettered managerial
control of all aspects of the corporation's business.
In contradistinction to the facts of *Hollywyle Assn.,
Inc.* v. *Hollister,* supra, there were no corporate by-
laws limiting Joseph's authority. He was in charge.
He had previously mortgaged corporate property,
albeit for the benefit of the corporation. He had
never had to account, in any orderly or systematic
fashion, for the conduct of his stewardship as cor-
porate president. It might well be argued that the
corporation's failure to discharge him as president,
even after this law suit was initiated, constitutes
ratification of his conduct. It is difficult to imagine

a clearer case of a principal's holding a corporate officer out as having authority to act. Although the appellants' brief continues to contest the question of holding out, that is not the gravamen of their challenge to the judgments of the trial court. They forcefully contest the sufficiency of the evidence with regard to the second element of the apparent authority test, the necessity for good faith reliance by the bank on the acts of the corporation. They urge that even if the corporation was derelict in its internal management, that dereliction was not known to the bank when the mortgage note was negotiated and could therefore not have induced good faith reliance by the bank. This arguable lack of connection between the conduct of the principal and the reliance by the third party is what makes the present controversy such a close case. Nonetheless, we are not persuaded that the trial court was clearly erroneous in finding that good faith reliance, the second element of apparent authority, was sufficiently established. Practice Book, 1978, § 3060D.

It is true that the procedures followed by the bank in negotiating this loan with Joseph Lettieri on his own behalf and on behalf of the corporation do not comport with recommended cautionary business practices. It is customary when dealing with the officer of a corporation in any but routine business operations to ask for a resolution of the board of directors certified by the corporate secretary, not by the very corporate officer whose authority is in question. Cross, Corporation Law in Connecticut, 285 (1972); Kempin, "The Corporate Officer and the Law of Agency," 44 Va. L. Rev. 1273, 1285 (1958). The bank furthermore had other information that might well have raised doubts about the

regularity of its transaction: It knew that the corporation had been legislated out of existence, and it was aware that corporation property was to be mortgaged only after other noncorporate security had been determined to be unavailable. The bank did, however, make some inquiry about the propriety of the mortgage, which the trial court might reasonably have found to have sufficiently indicated at least minimal good faith. The bank asked the attorney at the closing about Joseph's authority. This attorney, Francis R. Sablone, Jr., was attorney for the corporation, and he or his firm had represented the corporation before and after the loan transaction. While a written letter of corporate counsel attesting to an officer's authority to bind the corporation may be the better practice; see Cross, supra; we are hardly in a position to characterize as a lack of good faith an oral inquiry directed to the same person.

The evidence of the bank's reliance, while similarly not overwhelming, was sufficient to sustain the trier's factual finding in that regard. It was undenied that Joseph was the corporation's president, and some reliance on the authority apparently created by that position was warranted. Furthermore, the bank was entitled to rely on the representation of counsel for the corporation that the transaction was authorized. We note, finally, that the record indicates that inquiry of the remaining corporation shareholders might well have been fruitless because of the confusion evidenced at trial about the corporation's books and the whereabouts of its shareholders.

The totality of the circumstances in this case supports the trial court's conclusion that Joseph

Lettieri had apparent authority to mortgage property of the corporation. Since the bank's reliance caused it to change its position by making the contemplated mortgage loan, we need not distinguish between apparent authority and estoppel as a basis for sustaining the action of the trial court. Seavey, Agency § 8 (1964). The conclusion that this corporation was bound by the acts of its president is consistent with the law's general recognition of the increased powers of corporate officers in modern corporate practice. See Cross, Corporation Law in Connecticut § 6.6 (1972).

## II

The appellants have argued and briefed two additional claims of error. The first claim maintains that foreclosure should have been denied the bank because its conduct put the appellants into an inequitable position. The appellants invoke a principle which this court has often recognized; *Hamm* v. *Taylor,* 180 Conn. 491, 497, 429 A.2d 946 (1980); *Hartford Federal Savings & Loan Assn.* v. *Lenczyk,* 153 Conn. 457, 463, 217 A.2d 694 (1966); *Glotzer* v. *Keyes,* 125 Conn. 227, 231, 5 A.2d 1 (1939); *Brand* v. *Woolson,* 120 Conn. 211, 214, 180 A. 293 (1935); *Mackey* v. *Dobrucki,* 116 Conn. 666, 670, 166 A. 393 (1933); *Beach* v. *Isacs,* 105 Conn. 169, 134 A. 787 (1926); but which is not applicable except on an appropriate foundation of fact. *Hamm* v. *Taylor,* supra; *Atlas Realty Corporation* v. *House,* 120 Conn. 661, 671, 183 A. 9 (1936). The trial court found the corporation and its shareholders, and not the bank, to bear principal responsibility for the difficulties that the corporation has now encountered. The trial court, as trier of the facts, has not ignored equitable considerations but

has balanced the equities against the appellants. That conclusion is no more clearly erroneous than are any of the trier's other related findings of fact.

The final claim of error raises a procedural point. The appellants maintain that the trial court should have granted the motion of the corporation to be added as a party plaintiff in the first suit, the suit to set aside the mortgage. Concededly the corporation, a named defendant, was a full participant in the second suit, the suit to foreclose the mortgage. As a general rule, joinder is indicated in any suit adjudicating title to land. See *Graham* v. *Zimmerman,* 181 Conn. 367, 372, 435 A.2d 996 (1980); *Arnold* v. *Hollister,* 131 Conn. 34, 38, 37 A.2d 695 (1944). The decision whether to grant a motion for the addition of a party to pending legal proceedings rests generally in the sound discretion of the trial court. General Statutes §§ 52-102, 52-107, 52-108; Practice Book, 1978, §§ 85, 99, 100; *Jones* v. *Ricker,* 172 Conn. 572, 575 n.3, 375 A.2d 1034 (1977); *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 555, 219 A.2d 225 (1966). In the exercise of that discretion, the trial court might reasonably have taken into account the failure of the corporation to file its motion until the time of trial, long after the pleadings had been closed, the possibility of prejudice to the bank in its third party actions, and the unlikelihood of prejudice to the corporation. *Pope* v. *Watertown,* 136 Conn. 437, 438, 72 A.2d 235 (1950); *Starr Cash & Package Car Co.* v. *Starr,* 69 Conn. 440, 445, 37 A. 1057 (1897); see 1 Moller & Horton, Practice Book Ann., 186–88 (1979). The real issue in any motion for joinder is the presence of all the interested parties, either as plaintiffs or as defendants, to enable the court to make a complete determination of all of the matters in controversy. Since

the corporation was a party to the foreclosure action, it is difficult to see how it was prejudiced by its failure to be joined in the action to set aside the mortgage, when the two actions were from the outset consolidated for trial. The appellants have made no showing whatsoever that the corporation's absence from the first suit in any way disabled it from presenting any evidence or making any argument in the consolidated trial. In the light of all of these circumstances, we cannot say that the trial court's refusal to permit the joinder was an abuse of its discretion.

There is no error.

In this opinion the other judges concurred.