[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
The plaintiff real estate broker applied for a prejudgment remedy seeking an attachment of the defendant corporation's real estate. In the proposed unsigned, two count complaint the plaintiff seeks damages as a result of the defendant's failure to pay a commission arising out of a lease procured by the plaintiff and for violations of General Statutes 42-110a, et seq. (CUTPA). When the matter was assigned for a hearing, the parties, with the consent of the presiding judge, stipulated that in lieu of a hearing on the prejudgment remedy, the parties would fully brief and argue CT Page 9977 the defendant's motion to strike, and the plaintiff would be entitled to offer certain exhibits to be considered in the determination of the legal sufficiency of its complaint.
The first count of the complaint alleges that the plaintiff had procured a tenant who leased the defendant's property for three years with an option to extend for an additional three years. The complaint further alleges that although the defendant paid the plaintiff its commissions due for the original three year term, when the defendant later entered into an extension of the lease with its tenant for a five year term, it refused to pay the plaintiff its commission arising out of the extension.
The defendant moved to strike the complaint on the ground that the listing agreement does not comply with General Statutes 20-325a(b) (5) as it had not been properly executed, acknowledged and witnessed, having been signed only by the defendant corporation's president.
In its memorandum of law the defendant further claims that the listing agreement omits the lease rental and that this omission is fatal to the plaintiff's claim. The defendant's memorandum does not address the CUTPA claim.
The plaintiff first argues that the defendant's motion to strike does not properly raise the legal insufficiency of the omission of the lease rental and therefore the issue may not be considered by the court. Alternatively, the plaintiff claims that the listing agreement taken together with the exhibits contain sufficient information to satisfy General Statutes 20-325a.
The plaintiff next argues that when a corporation signs a listing agreement by its president, it need not comply with subsection (5) of 20-325a(b). The plaintiff also does not address the CUTPA count in its brief.
The purpose of a motion to strike is to test the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton, 212 Conn. 138, 142 (1989). In ruling upon a motion to strike a complaint, the court must take as admitted all well pled facts and construe them in a manner most favorable to the plaintiff. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). If a pleading CT Page 9978 contains the necessary elements of a cause of action, it will survive a motion to strike. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 218-219
(1987).
"Each motion to strike raising any of the claims of legal insufficiency . . . shall separately set forth each such claim of insufficiency and shall distinctly specify the reason or reasons for each claimed insufficiency." Practice Book 154; Blancato v. Feldspar Corporation, 203 Conn. 34,36, n. 3 (1987). Although the defendant's motion to strike does not set forth its claim that the omission of the lease rental made the listing agreement in non-compliance with General Statutes 20-325a, this issue was fully briefed and argued by both parties and the court will consider and decide it.
Refusing to do so would only delay resolution of the parties' claims. In a case involving a "procedural anomaly" such as here, where a trial court should have treated a motion to dismiss as a motion to strike, our Supreme Court said, ". . . where the pleadings and exhibits are the only evidentiary concerns, the dictates of judicial economy instruct us to resolve the legal validity of a particular agreement under an applicable statute at the earliest time practicable." McCutcheon Burr, Inc. v. Berman, 218 Conn. 512, 527 (1991).
I. The omission of the lease rental in the listing agreement.
It is undisputed that the listing agreement which contained a "sale/exchange" price or $120.00 per square foot for office space and $105.00 per square foot for warehouse space omitted the lease rental. However, the listing agreement contained a provision that a proposed tenant was expected to pay taxes, insurance, utilities, and interior and common area maintenance. Also, that a lease with such a tenant should contain a tax and insurance escalation clause, and a "COLA" clause. Paragraph 7 of the listing agreement further states in pertinent part: "Owner agrees that whenever during the term of this agreement the property shall have been . . . leased . . . for the price . . . in No. 5 above (left blank) or for any other price or upon such terms as may be agreed to by owner, the owner will pay the agent a commission CT Page 9979 as follows: . . . (emphasis provided.)
Leases: Lease commissions payable on execution of lease. Two percent of gross rent after 10 years forward. First five years six percent of gross rent. Next five years four percent of gross rent." The listing agreement was dated October 21, 1987 and expired October 31, 1988.
It is clear that the lease rental, or at least a formula by which it can be derived is an essential element of a listing agreement. See New England Land Co., Ltd. v. DeMarkey, 213 Conn. 612 (1990).
The plaintiff, however, asserts that the listing agreement is sufficient because it provides for the payment of a commission to the broker if the property is leased for any price agreed to by the owner. The defendant argues that a similar claim was rejected by our Supreme Court in New England Land Co., Ltd. v. DeMarkey, supra.
This agreement is distinguished from that in New England Land Co., Ltd. v. DeMarkey, supra, where the listing agreement had no clause which . . . could arguably be construed as meaning any price at which the owner agrees to . . . lease the property, i.e., at a price subject to the owner's approval, as opposed to a price set in advance." Id. at 612. The language in the listing agreement here specifically provides for any other price agreed upon by the owner, and permits such a construction, while the agreement in New England Land Co., Ltd., supra, did not.
The plaintiff further asserts that Exhibit A-2, entitled, "Proposal to Lease Space" signed by the plaintiff broker, the defendant's president and the tenant, when read together with the listing agreement collectively cured the lease rental omission. Exhibit A-2 clearly contains a rental formula for the space to be leased. In Good v. Paine Furniture Co., 35 Conn. Sup. 24 (1978) the court analogized the parol evidence rule under the Statute of Frauds in determining whether an agreement consisting of several writings could satisfy 20-325a. The court there held, at p. 27 (Parskey, J.). ". . . separate documents which not only relate to the same brokerage agreement, but which also collectively meet the specific requirements or 20-325a(b) will be deemed to constitute a valid contract . . . for purposes CT Page 9980 of 20-325a(b)." See also Jay Realty, Inc. v. Ahearn Development Corporation, 189 Conn. 52 (1983). In the instant case, although Exhibit A-2 does not specifically refer to the listing agreement, it was executed during its duration, it was on the plaintiff's stationery, it identified the tenant, and identified the defendant as the landlord and the plaintiff as the real estate agent. Moreover, paragraph 6 of the plaintiff's complaint alleges (which the court must take as true for purposes of this motion) "The defendant paid the commission due, pursuant to the agreement with the plaintiff for the . . . first three (3) year term." See also TIE Communications, Inc. v. Kopp, 218 Conn. 281, 288-289 (1991). Parol evidence is admissible to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement. Jay Realty, Inc. v. Ahearn Redevelopment Corp., supra, 56, and is considered when it convincingly shows that the writings are connected.
When reading Exhibits A-1 and A-2 collectively with the allegation of payment by the defendant of the commission due for the original three year term, the court finds that the missing link has been furnished, and the omission of the rental in the original listing agreement was cured. This evidence is relevant and does not vary or contradict the terms of the listing agreement. Therefore, the motion to strike must fail on this ground.
II. The failure of the signature of defendant's president to be witnessed and acknowledged.
The motion to strike attacks the plaintiff's complaint as a whole. The motion must therefore fail if any of the plaintiff's claims are legally sufficient. Doyle v. A P Realty Corp., 36 Conn. Sup. 126, 127 (1980). However, as the issue of whether there was a proper signature must be determined and was also fully briefed and argued, judicial economy dictates that it also be considered and decided.
General Statutes 20-325a(b) states, in pertinent part, that:
 No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered . . . unless such acts or CT Page 9981 services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall . . . (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent.
General Statutes 47-5 states, in pertinent part, that:
 All conveyances of land shall be . . . (2) . . . if the grantor is a corporation or partnership, subscribed by a duly authorized person; (3) acknowledged by the grantor, his attorney, or such duly authorized person to be his free act and deed and (4) attested to by two witnesses. . . .
The formalities of General Statutes 47-5 are required where an agent is signing the listing agreement for the owner. Kovacs v. Kaspar, 41 Conn. Sup. 225, 227 (1989). The president of a corporation when acting for it is merely its agent. Lettieri v. American Savings Bank, 182 Conn. 1,7-8, 437 (1980). Corporate presidency per se does not confer inherent authority to commit the corporation. Ordinarily, the liability of the corporation depends upon whatever specific powers of agency were conferred on the president. "It is customary when dealing with the officers of a corporation in any but routine business operations to ask for a resolution of the board of directors certified by the corporate secretary. . . ." Lettieri v. American Savings Bank, supra, 10. The execution of a real estate listing agreement is not a routine matter, and would certainly be a transaction where a prudent real estate broker would at a minimum require a corporate resolution.
It is well established that the requirements of20-325a(b) are mandatory rather than permissive and that the CT Page 9982 statute is to be strictly construed. McCutchen Burr, Inc. v. Berman, supra, 520. "A broker who does not follow the mandate of [20-325a(b)] does so at his peril." Thornton Real Estate, Inc. v. Lobdell, 181 Conn. 228, 230-31 (1981).
Section 20-325a(b) (5) requires that either the owner sign the listing agreement or an agent authorized in writing executed in the manner required for conveyances of real estate by 47-5. The parties have not provided the court with any authority on the issue of an officer signing for a corporation, and the court's own research has not revealed any. See McCutcheon Burr, Inc. v. Berman, supra, (issue of whether partner authorized by General Statutes 34-47 to sign listing agreement for partnership discussed, but decided on other grounds). The plain language of20-325a(b) when applied to a corporate owner, who must sign by an agent, requires that authorization of such agency be provided in the manner required by 47-5.
However, this is not the end of the analysis. A corporation may become bound to an agreement, despite its agent's lack of authority, by a subsequent ratification of the agreement. Ratification by a corporation with power to do so has the effect of a prior authorization and binds the corporation just and fully as though the appropriate authority had been initially given. In the present case, paragraph 6 of the plaintiff's complaint alleges in effect, that the defendant paid the plaintiff its commissions due pursuant to the listing agreement for the original lease term of three years. Whether this and other acts of the defendant constituted ratification cannot be determined at this stage of the proceedings so the motion to strike must fail on this ground, also.
For the foregoing reasons the motion to strike is denied.
Dated at New London this 9th day of November 1992.
Teller, J. CT Page 9983