[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case arises out of an alleged lease agreement between CT Page 11256 the defendant Viglione Heating and Cooling, Inc. and U-Vend, Inc. of Yonkers, New York, which lease was later assigned to Fairfield Lease Corporation and thence reassigned to the present plaintiff, Anpres, Inc. The agreement, which was signed by the defendant Laura DiBianco on behalf of Viglione Heating and Cooling, Inc., provided for the lease of a canned soda machine for a term of 39 months at the rate of $149.50 per month. The machine was delivered to Viglione Heating and Cooling, Inc. on September 16, 1992, and DiBianco then gave U-Vend's representative a check drawn on Viglione's bank account and bearing the signature of Steven J. Viglione, the company's president. DiBianco was Viglione's office manager, and she had the authority to sign his name to company checks.
Unfortunately, DiBianco badly overestimated the soda-drinking capacity of Viglione's employees. U-Vend's sales representative, Michael Warren, had estimated that the machine would have to generate twenty-two or twenty-three sales per day on a five-day per week basis in order to break even, and DiBianco felt that this was possible. She was wrong.
It should be noted that although Steven Viglione himself was on the periphery of the negotiations regarding the vending machine, he was aware of them. Moreover, his wife, Constance, whom Viglione testified worked at the company and was "into everything" there, was very much involved in the discussions.
A total of only 302 sales was generated between the date of delivery and March 10, 1993, the last time that the vendor serviced the machine. The defendants made none of the monthly payments beyond the initial check at the time of delivery. The machine is still on the premises, and the plaintiff has made no effort to remove it.
The ultimate determination of this case depends on the resolution of three preliminary issues: 1) DiBianco's authority to enter into the lease agreement on behalf of Viglione; 2) whether the defendants were fraudulently induced to enter into the agreement; and 3) if the previous issues were to be decided in favor of the plaintiff, whether the plaintiff had any duty to mitigate damages by seeking to remove the machine once it was apparent that the defendants were in breach of the lease agreement.
The first of these issues may be quickly put to rest. Although Viglione Heating and Cooling continues to dispute that DiBianco had specific authority from it to enter into this lease agreement, it concedes in its memorandum of law that "DiBianco's title of Office CT Page 11257 Manager, the presence of the owner's wife at the initial meeting with Warren and DiBianco's use of the company check are sufficient to establish apparent authority . . ." see Lettieri v. American SavingsBank, 182 Conn. 1, 8-9 (1980). This court finds that Laura DiBianco did have the apparent authority to act on Viglione's behalf and to bind the corporation with respect to this transaction.
As to the claim of fraud in the inducement, the defendants introduced evidence to the effect that U-Vend's representative, Michael Warren, had told DiBianco, prior to her signing the lease agreement, that if the machine proved not to be profitable, U-Vend would come to pick up the machine in a couple of months. Assuming that this oral representation was in fact made, however, it was never reduced to writing. To the contrary, the lease as signed contains the following specific provision:
 "15a. For Lease and Taste Check: This lease may be canceled only in the following manner and at the following time: the Lessee desiring to cancel must mail a registered letter to the Lessor at the above address postmarked within strictly no later than three weekdays, inclusive of [the] date of the signing of Receipt of Lease Property.".
This provision was not part of the pre-printed "boilerplate" lease language, but rather was a typed-in provision that was specifically initialed by DiBianco.
There is no basis in the record upon which this court can conclude that the representation, if made, was fraudulent. To the extent that the representation was a misstatement of what the agreement would contain, such a misstatement was amply clarified by the lease agreement's specific language regarding cancellation. Had the defendants wanted a longer trial period, they could have and should have negotiated for it.
Finally, the defendants argue that even if they are found liable under the lease agreement, the plaintiff had the duty to mitigate its damages by taking possession of the vending machine within a reasonable period of time after it had become clear that Viglione had breached the lease agreement. The plaintiff argues that the agreement itself provides that "prior to Lease expiration, in all other circumstances, the lessor has neither the right nor the duty, to retake possession of the leased equipment." CT Page 11258
Although the plaintiff may have had no specific contractual duty to take possession of the machine, "[i]t is well established that in an action for damages for breach of a lease, the injured party is under a duty to mitigate his or her damages." Rokalor, Inc.v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384, 390 (1989). This common law duty requires "reasonable efforts" to minimize damages, and what constitutes such efforts is a question of fact for the trier.
The record reflects that on October 20, 1992, Viglione claimed in writing to U-Vend that the lease agreement was invalid based on its assertion that DiBianco was not authorized to enter into the agreement. On April 7, 1993, Viglione's attorney wrote to the plaintiff's counsel to the same effect. As indicated above, however, this court has found that DiBianco had the apparent authority to act on behalf of Viglione and that the contract was not, despite the disclaimers of Viglione and its attorney, invalid on that basis. The record further reflects that as late as March 10, 1993, U-Vend serviced the machine, noting, as previously indicated, that in excess of 300 sales had been made from the date of installation to the date of service. DiBianco signed the service request form on behalf of the defendant, indicating that "[t]he service above was completed to my entire satisfaction." Thus, other than its failure to pay the monthly charge and its insupportable claim that the lease agreement was invalid, the defendants did nothing to put the plaintiff on notice that it should act to mitigate its damages.
By the time the plaintiff found it necessary to commence legal action in this court, however, it was patently obvious to all that the defendants were in default of their agreement and that it was reasonable for the plaintiffs to act to mitigate their damages. Although it is difficult to determine the precise point in time when that duty attached, it is at least reasonable to say that by August of 1993, when the application for a prejudgment remedy was served on the defendants, the plaintiffs were well aware of the situation and were under a duty to mitigate damages. The court will therefore limit damages for that period of the contract beginning October 10, 1992, when the second monthly payment was due, and concluding on August 10, 1993, a period of ten months.
Based on this court's conclusions that the defendant DiBianco was at all times acting on behalf of the defendant Viglione and with the apparent authority to do so, that the defendants breached the lease agreement, that the defendants have failed to establish their special defenses and that the plaintiff had a duty to mitigate damages commencing in August of 1993, judgment will enter in favor CT Page 11259 of the plaintiff in the amount of $1,495, exclusive of attorney's fees and costs.
Jonathan E. Silbert, Judge