[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DAMAGES
Plaintiff brings this legal malpractice action against defendant. His liability was found by the court on a motion for summary judgment. The issue is solely damages. CT Page 8750
 Facts
On or about August 10, 1987 a corporation called Pine Manor, Inc. (Pine Manor) agreed to sell a parcel of land known as 966 South Main Street, Southington, Connecticut (the Property) to plaintiff Villa Construction, Inc. (Villa) for $525,000. That agreement contains the following paragraph:
 3. CONTINGENCY: This Agreement is expressly conditional upon the Buyer selling and closing said transaction with J. R. Taddia under the terms, conditions and covenants of a real estate sales agreement between Villa Construction, Inc. and J.R. Taddia. In the event that said agreement between the Buyer and J.R. Taddia fails to close for any reason whatsoever, the Buyer's obligations hereunder shall be considered null and void.
Passage of title was to be September 8, 1989 and time was of the essence as to that closing date. Sometime after August 10, 1989 the agreement was amended in writing moving the closing date to November 3, 1989.
On August 18, 1989 Villa entered into a contract to sell the Property to J.R. Taddia (Taddia) for $625,000.00.
This contract was subject to a mortgage contingency clause which provided:
 3. MORTGAGE CONTINGENCY: This Agreement is expressly conditional upon the Buyer herein securing from an accredited lending institution a mortgage loan on said premises for an amount not more than $465,000.00, at the interest rate prevailing at the time of the mortgage commitment including required points.
 If Buyer is unable to obtain a commitment for said mortgage loan by October 20, 1989 he shall advise the Seller, in writing, and the Seller shall thereupon refund to the Buyer all monies paid under this Real Estate Sales Agreement and this Agreement shall be at an end and null and void.
 The Buyer agrees to apply for said mortgage loan within five business days from the date of this agreement.
The transfer of title was to be on November 3, 1989 and time CT Page 8751 was of the essence as to that closing date.
The plaintiffs John Giano (Giano) and Gary Salvatore (Salvatore) were each owners of 25% of Pine Meadow which had bought the Property in the fall of 1988 for $350,000.00.
Giano and Salvatore each owned 50% of Villa.
There is no evidence that Taddia applied for a mortgage from any lending institutions within five days after August 18, 1989 or at any time. Many banks were being cautious at this time and refused to make loans for various reasons.
Taddia did, at Giano's suggestion, contact Marshall Bullock (Bullock) an employee of Southington Savings Bank (SSB) in October, 1989 in regard to getting a loan from that bank but Bullock was not cooperative and pressed Taddia to buy another piece of property owned by Bullock. In addition he wanted a new appraisal and financial settlements. The new appraisal was never provided.
This was Taddia's first experience in trying to borrow money from SSB. Taddia not being able to finance his purchase told Plaintiffs he could not and would not buy the Property. It would appear this notice was given on or before October 20, 1989.
With the Taddia contract being voided the proposed sale to Villa became void as well.
Plaintiffs felt that Bullock individually and SSB were liable for Taddia's failure to obtain financing and on December 28, 1992 hired the defendant attorney by written contract to sue or collect damages for them from Bullock and SSB. They paid him an agreed upon $5,000.00 retainer. The retainer was returned prior to this action because defendant had failed to act in a timely manner and the statute of limitations as to the claims had expired.
The plaintiffs have provided no evidence that Bullock was ever authorized to act for the bank in regard to offering his own property for sale or doing anything to interfere with Taddia's effort to get a loan or to spoil any contract of plaintiffs.
Taddia was also busy with condominiums, a golf course in Pennsylvania, the serious illness of his partner and old friend, CT Page 8752 Hicks, property in Torrington and some marital discord. He did ask for an application but never received one and never gave a completed application to SSB. Taddia did not agree at any time to provide a new MAI appraisal as requested. Neither he nor plaintiffs agreed to pay for one.
Taddia gave final financial statements to Bullock on November 28, 1989.
 Law
Plaintiff's bring this action in three counts. The first count alleges a contract between defendant and plaintiffs for the rendering of legal services which was breached by defendant. The second count alleges negligent performance of defendant's professional duties as an attorney. The third count is a claim under C.G.S. § 42-110 (a) et seq., a CUTPA claim.
Although this suit is only against the attorney defendant in the hearing in damages part the plaintiff had to prove that either Bullock or SSB or both acted in such a manner that if defendant had acted in a timely fashion plaintiffs would have obtained a judgment. The judgment would have to include a finding of liability and an award of damages.
 I. As to SSB on all Counts
The only evidence against SSB that would be admitted in a lawsuit would be for actions or promises made by Bullock on behalf of the bank. In order for such evidence to bind the bank it would have to be proven that Bullock was SSB's agent. No such evidence was presented here. No one from the bank was brought to testify as to Bullock's authority, in fact or apparent. The court cannot find that Bullock was acting for the bank in the matters alleged by plaintiffs. Lettieri v. AmericanSavings Bank, 182 Conn. 1, 8-10.
For proof of agency there must appear "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." Beckenstein v. Potter Carrier, Inc.,191 Conn. 120, 133. These were not presented.
 II. As to Bullock
CT Page 8753 A. First and Second Counts
Bullock was a disloyal employee of SSB. His actions in regard to suggesting a purchase of his own property were more than inappropriate. However, it was Taddia who failed to obtain the financing; to file an application; and to fulfill the contract. Thus in a suit against Bullock, plaintiffs could not prevail.
 B. Third Count
In regard to the third count "professional negligence — that is malpractice — does not fall under CUTPA." Haynes v. Yale-NewHaven Hospital, 243 Conn. 17, 34-35. However, a CUTPA claim can be made for a professional person's "entrepreneurial or commercial aspects of the profession of law." id 35 There was no evidence that any of the alleged or proven actions or inactions of the defendant whether other than those of an attorney.
Judgment for defendant.
N. O'Neill, J.