TREVEK ENTERPRISES, INC. *v.* VICTORY
CONTRACTING CORPORATION
(AC 28086)

Flynn, C. J., and Lavine and Peters, Js.

Argued February 14—officially released May 6, 2008

*Randall J. Carreira,* for the appellant (defendant).

*Leon J. Greenspan,* for the appellee (substitute plaintiff).

*Opinion*

PETERS, J. Pursuant to General Statutes § 33-921 (a),[1] a foreign corporation that has conducted business in this state without having a certificate of authority from the secretary of the state must obtain such a certificate in order to maintain a proceeding in a Connecticut state court. Section 33-921 (b) imposes a similar constraint on an assignee of a cause of action arising out

[1] General Statutes § 33-921 provides: "(a) A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority.

"(b) The successor to a foreign corporation that transacted business in this state without a certificate of authority and the assignee of a cause of action arising out of that business may not maintain a proceeding based on that cause of action in any court in this state until the foreign corporation or its successor obtains a certificate of authority.

"(c) A court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor requires a certificate of authority. If it so determines, the court may further stay the proceeding until the foreign corporation or its successor obtains the certificate.

"(d) A foreign corporation is liable to this state, for the years or parts thereof during which it transacted business in this state without a certificate of authority, in an amount equal to (1) all fees and taxes which would have been imposed by law upon such corporation had it duly applied for and received such certificate of authority to transact business in this state and (2) all interest and penalties imposed by law for failure to pay such fees and taxes. A foreign corporation is further liable to this state, for each month or part thereof during which it transacted business without a certificate of authority, in an amount equal to one hundred sixty-five dollars, except that a foreign corporation which has obtained a certificate of authority not later than ninety days after it has commenced transacting business in this state shall not be liable for such monthly penalty. Such fees and penalties may be levied by the Secretary of the State. The Attorney General shall bring such action as he may deem necessary to recover any amounts due the state under the provisions of this subsection including an action to restrain a foreign corporation against which fees and penalties have been imposed pursuant to this subsection from transacting business in this state until such time as such fees and penalties have been paid.

"(e) Notwithstanding subsections (a) and (b) of this section, the failure of a foreign corporation to obtain a certificate of authority does not impair the validity of its corporate acts or prevent it from defending any proceeding in this state."

of such business. The principal issue in this case is whether, as the trial court impliedly held, § 33-921 (b) exempts an assignee from this certification requirement if the assignee is a Connecticut corporation. Under the circumstances of this case, in which the assignee was not in existence at the time that the foreign corporation conducted its business in Connecticut, we decline to construe § 33-921 to excuse compliance with the statute's broadly stated certification requirement. Accordingly, we reverse the judgment of the trial court in favor of the assignee.

On March 29, 2005, Trevek Enterprises, Inc. (Trevek, Inc.), a New York corporation, brought an action in the Superior Court against the defendant, Victory Contracting Corporation, to recover the unpaid portion of the contract price for roofing services that Trevek, Inc., had performed for the defendant in this state. The defendant not only denied its liability on the contract but also raised a number of special defenses, including a challenge to Trevek, Inc.'s authority to pursue its claim in light of § 33-921 (a). In response, Trevek, Inc., assigned its contract claim to a recently formed Connecticut corporation, Trevek Enterprises CT, Inc. (Trevek CT). Over the defendant's objection, the trial court, *Mintz, J.*, granted the motion of Trevek CT to be substituted as party plaintiff and denied the defendant's motion that the action be stayed pursuant to § 33-921 (c). After a trial on the merits, during which the court denied the defendant's renewed motion for a stay as well as its subsequent motions to reargue and to open and to vacate the judgment, the court, *Schuman, J.*, rendered a judgment on the merits in favor of the substitute plaintiff, Trevek CT, in the amount of $24,877.84.

The relevant facts are undisputed. Pursuant to a written contract dated November 21, 2003, Trevek, Inc., agreed to perform roofing services for the defendant.

Trevek, Inc., maintained that it had completed its performance under the contract by December 5, 2003. Contesting the quality of the workmanship, the defendant refused to pay the remaining part of the contract price to Trevek, Inc.

About one year later, on December 14, 2004, Trevek CT was incorporated in this state. After the substitution of Trevek CT as the plaintiff to pursue Trevek, Inc.'s contract rights against the defendant, the trial court found that credible testimony presented by the president of Trevek CT established the right of Trevek CT to recover monetary damages from the defendant. The court expressly denied the defendant's request to reconsider the prior ruling of the court, *Mintz, J.*, on the applicability of § 33-921 to the controversy between the parties.

The defendant has raised a number of issues in its appeal, but we need to decide only two. The first issue is the propriety of the trial court's substitution of Trevek CT as the party plaintiff in the contract action against the defendant. The second issue is the propriety of the trial court's denial of the defendant's motion for a stay to require Trevek, Inc., to obtain certification in compliance with § 33-921. We disagree with the defendant's first claim but we agree with its second claim.

I

SUBSTITUTION

Practice Book § 9-16 confers authority on a trial court judge to substitute a new plaintiff as the sole plaintiff in a pending action as long as the substitution does not prejudice the defense of the action. "The decision whether to grant a motion for the [substitution] of a party to pending legal proceedings rests generally in the sound discretion of the trial court." *Lettieri* v. *American Savings Bank*, 182 Conn. 1, 13, 437 A.2d 822 (1980).

Our review is limited to a determination of possible abuse of discretion. Id., 14.

For three reasons, the defendant claims that the trial court in this case abused its authority in granting the motion to substitute Trevek CT as the plaintiff. The defendant maintains that (1) the assignment from Trevek, Inc., to Trevek CT was so poorly executed as to be a nullity, (2) because the assignment to Trevek CT did not expressly identify Trevek CT's status as that of an assignee, Trevek CT lacked standing to pursue Trevek, Inc.'s contract claim and the trial court lacked subject matter jurisdiction to adjudicate its merits, and (3) because the assignment was intended to evade and undermine the legislative policy articulated in § 33-921, the assignment was invalid and ineffective as a matter of public policy. We disagree.

At the outset, we note that the objections that the defendant now raises to the validity of the assignment to Trevek CT were not raised at trial. In response to the motion for substitution, the defendant merely filed another motion for a stay of the proceedings pursuant to § 33-921. Generously construed, the defendant's motion may be read as challenging the legal consequences of the assignment and the subsequent substitution, but it did not inform the trial court that the defendant was challenging the validity of the assignment itself.

On this state of the record, the only issue that is properly before us is the defendant's claim that the assignment was so flawed that the trial court lacked subject matter jurisdiction to adjudicate the underlying contract dispute between the parties. This argument assumes that § 33-921 is a constraint on the subject matter jurisdiction of the Superior Court rather than on its personal jurisdiction. This assumption is untenable. This court has recognized the authority of a trial court to substitute a new plaintiff when the record showed

that the original plaintiff had no standing to bring the action in the first place. See *Investors Mortgage Co.* v. *Rodia*, 31 Conn. App. 476, 483–84, 625 A.2d 833 (1993); *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.*, 31 Conn. App. 80, 84–85, 623 A.2d 517, cert. denied, 226 Conn. 908, 625 A.2d 1378 (1993). Indeed, under the predecessor statute to § 33-921, we noted that a foreign corporation "could have at any time during the course of the trial filed a certificate of authority with the secretary of the state." *Poly-Pak Corp. of America* v. *Barrett*, 1 Conn. App. 99, 104, 468 A.2d 1260 (1983). The fact that the statute expressly contemplates an action by the assignee of a cause of action demonstrates that the court did not lack subject matter authority to adjudicate controversies arising under the statute. See *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999).

We are persuaded, in sum, that the trial court had jurisdiction to permit Trevek CT to be substituted as the party plaintiff in this case and did not abuse its discretion in doing so. Section 33-921 does not require the assignment of the rights of a foreign corporation to an in state assignee to take any particular form. The defendant has no basis for complaining about an assignment that is contemplated by the very statute on which it relies for relief.

## II

### STAY

The defendant's alternate contention is that the trial court improperly denied its motion to stay the contract action until the foreign corporation, Trevek, Inc., complied with the certification requirement in § 33-921. A dispute about the applicability and interpretation of a statute is entitled to plenary review on appeal. See, e.g., *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 8, 905 A.2d 55 (2006).

Section 33-921 (c) authorizes a court to "stay a proceeding commenced by a foreign corporation, its successor, *or assignee* until it determines whether the foreign corporation or its successor requires a certificate of authority. . . ." (Emphasis added.) On the record in this case, it is undisputed that, if Trevek, Inc., itself had continued to prosecute its contract claim against the defendant, it would have been required, by the terms of § 33-921 (a), to obtain certification before persisting in the present litigation about the merits of the contractual controversy between the parties. Under those circumstances, as the defendant consistently has maintained, the defendant would have been entitled to insist on a stay of such litigation pursuant to § 33-921 (c).

The dispute of the parties focuses therefore on the applicability of the foreign corporation certification requirement to a Connecticut assignee such as Trevek CT. The trial court summarily denied the defendant's request for a stay without engaging in any analysis of any part of § 33-921.[2]

In response to the defendant's renewal on appeal of the statutory argument presented to the trial court, Trevek CT asserts that its status as a Connecticut corporation categorically exempts it from having to procure a certificate of authority. It maintains that, as a local corporate citizen, it presently is subject to regulation in this state with respect to any business that it conducts here. According to Trevek CT, it follows that it impliedly is exempt from the regulatory constraints that § 33-921 imposes on other assignees of causes of action arising from business conducted here by uncertificated foreign

---

[2] The defendant was unsuccessful in its timely effort to obtain a meaningful articulation of the trial court's reasoning.

corporations.[3] This novel argument has been put forward unbuttressed by citation to statutory language or case law authority.

To address the issue of first impression that Trevek CT has raised, we must place it in context. Of necessity, our starting point is the text of § 33-921. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citation omitted; internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401–402, 920 A.2d 1000 (2007).

The text of § 33-921 provides no support for Trevek CT's position because it makes no distinction between assignees that are Connecticut corporations and assignees that are not. The question for us is whether to engraft an exemption on the text of the statute.

Our point of departure for assessment of the claim by Trevek CT for judicial creation of an exemption that

---

[3] Trevek CT has not argued that assignees that are not newly incorporated Connecticut corporations are exempt from the obligations imposed by General Statutes § 33-921 (b) and (d).

§ 33-921 does not contain expressly is the undisputed fact that our statute was enacted to conform our corporate law to that of the Model Business Corporation Act (model act).[4] That statute, and ours, are properly characterized as remedial statutes. See Model Business Corporation Act Task Force, Connecticut Business Corporation Act Final Working Draft (March 3, 1994) p. 328. The rules of construction governing exemptions from remedial statutes are unequivocal. "In order to implement the policy and the purpose of [a remedial statute], it is appropriate to construe its exemptions narrowly and to impose the burden of proving the applicability of an exemption upon the [party] claiming its benefit." *Westport* v. *State*, 204 Conn. 212, 222, 527 A.2d 1177 (1987). It would be inconsistent with this established rule of construction for this court to "infer from the statute an exception to its provisions which the legislature has not prescribed either by word or implication." *Busko* v. *DeFilippo*, 162 Conn. 462, 471, 294 A.2d 510 (1972).

The legislative history of § 33-921 further undermines Trevek CT's argument. When the final draft of the Connecticut Business Corporation Act was presented to the judiciary committee, an official commentary accompanied § 33-921.[5] See Connecticut Business Corporation Act Final Working Draft, supra, pp. 327–28. The official comment, extracted from the model act, states: "If the

---

[4] In 1994, the General Assembly enacted § 33-921 as part of a comprehensive revision of the Connecticut Stock Corporation Act, designed to bring our corporations statutes into conformity with the American Bar Association's revised Model Business Corporation Act. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1994 Sess., p. 1801. Collectively, the new statutes are known as the Connecticut Business Corporation Act.

[5] At the hearing on this statute, Representative Richard D. Tulisano affirmatively commented on the availability of the official commentary for interpretation of our statute. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1994 Sess., pp. 1803–1805, testimony of Harold Finn, and remarks of Representative Tulisano.

successor has acquired all or substantially all of the assets of the foreign corporation, the successor may maintain suit after it has qualified. In the case of all other assignments, *the foreign corporation itself must obtain a certificate of authority before the assignee may maintain suit on the claim.*"[6] (Emphasis added.) Id., p. 328.

The plaintiff has not cited any case law in any other jurisdiction that supports its proposed interpretation of § 33-921. To the contrary, our research has uncovered three cases in which state courts, analyzing the claims of local assignees of uncertificated foreign corporations pursuant to statutes similar to § 33-921,[7] have interpreted their statutes to require a certificate of authority from the foreign corporation before the assignee may be allowed to pursue the assigned cause of action. See *Healey* v. *Morgan*, 135 Ga. App. 915, 915–16, 219 S.E.2d 628 (1975); *Associates Financial Services Co. of New Jersey* v. *Bozzarello*, 168 N.J. Super. 211, 402 A.2d 942 (1979); *Leasecomm Corp.* v. *Renaissance Auto Care, Inc.*, 122 N.C. App. 119, 121–22, 468 S.E.2d 562 (1996).[8]

Indeed, the undisputed facts in this case make Trevek CT's argument for an implied exemption particularly unpersuasive. Trevek CT has not challenged the accuracy of the defendant's repeated representation to the

---

[6] Trevek CT has not persuaded us that it should be considered as a successor corporation under the statute. Nothing in the record indicates that Trevek CT has acquired all or substantially all of the assets of Trevek, Inc.

[7] "All but [eleven] jurisdictions follow the substance of the Model Act and expressly provide that the successors and assignees of a foreign corporation may not maintain suit until the corporation obtains a certificate of authority." 4 Model Business Corporation Act Annotated (American Bar Association) § 15.02, p. 15-40 (3d Ed. 2000 through 2002 Sup.).

[8] Dicta in two other cases indicate that an assignee could proceed on a claim, having obtained its own certificate of authority, without certification compliance by the foreign corporation. See *Dieter Engineering Services, Inc.* v. *Parkland Development, Inc.*, 199 W. Va. 48, 56 n.5, 483 S.E.2d 48 (1996); *State ex rel. Carlund Corp.* v. *Mauer*, 850 S.W.2d 357, 363 (Mo. App. 1993).

trial court that, according to the records maintained by the secretary of the state, the date of Trevek CT's establishment in this state postdated Trevek, Inc.'s contract performance by more than one year. Indisputably, if Trevek, Inc., had itself endeavored to enforce its contract rights against the defendant during that first year, it would have had to comply with § 33-921 (d) by paying the fees, taxes and penalties that the legislature has prescribed for transacting business in this state without a certificate of authority. Furthermore, Trevek CT has not represented that it complied with § 33-921 (d) in any fashion in the course of becoming incorporated here.

On this state of the record, we conclude that the trial court improperly denied the defendant's motion for a stay pursuant to § 33-921 (c) to compel Trevek CT to obtain from Trevek, Inc., the certificate of authority prescribed by § 33-921 (b). The court's apparent assumption that Trevek CT's status as a Connecticut corporation automatically exempted it from compliance with § 33-921 cannot be reconciled with the requirements for enforcing the mandates of a remedial statute.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.