******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

HUDSON CITY SAVINGS BANK *v.*
CHARLES D. HELLMAN ET AL.
(AC 41472)

Keller, Elgo and Bishop, Js.

*Syllabus*

The substitute plaintiff, M Co., sought to foreclose a mortgage on certain
real property owned by the defendants. After commencing the action,
the original plaintiff, H Co., moved for summary judgment as to liability,
which the trial court granted. Thereafter, the court granted H Co.'s
motion to substitute M Co. as the plaintiff. In support of its motion to
substitute, H Co. provided certain evidence that showed it had merged
into M Co. approximately twenty-one months before H Co. had filed its
motion for summary judgment. The court then rendered judgment of
foreclosure by sale in favor of M Co., and the defendants appealed to
this court, claiming that the court improperly granted the motion to
substitute M Co. for H Co. and granted summary judgment as to liability
in favor of H Co. *Held*:

1. The trial court did not abuse its discretion when it granted H Co.'s motion
to substitute M Co. as the plaintiff as the substitution had no substantive
effect: when H Co. merged into M Co., no assignment of the underlying
cause of action occurred, as H Co.'s assets, including the cause of action
against the defendants, vested in M Co. by operation of law, and M Co.
was the real party of interest upon its merger with H Co.; moreover,
the substitution of M Co. did not prejudice the defendants, as the defen-
dants did not articulate how being misled by the failure to substitute
M Co. as the plaintiff for more than two years after the merger occurred
caused actual prejudice to their ability to defend against the claims
brought against them, and M Co.'s obligation to establish its prima
facie case was not circumvented because it carried the same burden in
obtaining summary judgment as H Co. once the merger became effective;
furthermore, under established law, the substitution of M Co. as the
plaintiff was not necessary after its merger with H Co., and the failure
of M Co. to substitute itself prior to H Co.'s motion for summary judgment
did not preclude the defendants from obtaining discovery on any of the
issues that were pertinent to opposing that motion.

2. The defendants could not prevail on their claim that the trial court improp-
erly granted summary judgment as to liability in H Co.'s favor because
H Co. failed to establish that it had standing, in that it possessed the
mortgage note at the time the action was commenced: the record clearly
demonstrated that H Co. satisfied its prima facie case that it had standing,
as its production of the note, endorsed in blank, established a rebuttable
presumption that it possessed the note at the time it commenced the
foreclosure action, and the defendants failed to offer evidence to rebut
that presumption; moreover, although H Co. was not obligated to provide
anything further to show that it had standing to enforce the note, its
additional evidentiary submissions established that it possessed the note
at the time it commenced the underlying action.

3. The trial court improperly determined that M Co. satisfied its burden of
proof to establish that H Co. complied with the notification requirements
pursuant to the mortgage, and, thus, there was a genuine issue of material
fact as to whether H Co. satisfied a condition precedent to foreclosure;
H Co. did not submit any evidence to prove that the notice of default
was actually delivered to the defendants, and no admissible evidence
existed to support the claim that the notice of default was sent by first
class mail, and, accordingly, the judgment was reversed and the case
was remanded for further proceedings.

Argued September 23, 2019—officially released April 14, 2020

*Procedural History*

Action to foreclose a mortgage on certain real prop-
erty of the named defendant et al., and for other relief,
brought to the Superior Court in the judicial district

of Stamford-Norwalk, where the court, *Randolph, J.*, granted the named plaintiff's motion for summary judgment as to liability; thereafter, the court, *Lee, J.*, granted the named plaintiff's motion to substitute Manufacturers and Traders Trust Company as the plaintiff; subsequently, the court, *Randolph, J.*, rendered judgment of foreclosure by sale, from which the named defendant et al. appealed to this court; thereafter, the court, *Randolph, J.*, granted the substitute plaintiff's motion to terminate the stay of execution. *Reversed*; *judgment directed*; *further proceedings*.

*Charles D. Hellman*, self-represented, for the appellants (named defendant et al.).

*Zachary Grendi*, for the appellee (substitute plaintiff).

*Opinion*

ELGO, J. The defendants Charles D. Hellman and Holly H. Hellman[1] appeal from the judgment of foreclosure by sale rendered by the trial court in favor of the substitute plaintiff, Manufacturers and Traders Trust Company (M&T). On appeal, the defendants claim that the court improperly (1) granted the motion to substitute M&T for Hudson City Savings Bank (HCSB) as the plaintiff in the action,[2] and (2) rendered summary judgment as to liability in favor of HCSB. We agree with the defendants' second claim and reverse the judgment of the trial court.

The following facts and procedural history are relevant to the present appeal. On May 22, 2007, the defendants executed and delivered a note payable to Bank of America, N.A. (BANA), in the original principal amount of $532,000. The loan was secured by a mortgage deed on real property located in Westport, executed that same day, and recorded on the Westport land records.[3] BANA endorsed the note in blank. The defendants have been in default on the note and mortgage since September, 2011.

On January 7, 2013, BANA assigned both the note and the mortgage to HCSB, with that assignment subsequently recorded on the Westport land records on January 14, 2013. On June 2, 2013, BANA, as the servicer for the note, sent a letter to the defendants notifying them of their rights under the mortgage relief program pursuant to the provisions of General Statutes §§ 8-265cc through 8-265kk. On June 21, 2013, BANA sent a letter to the defendants providing notice that the loan was in serious default and information with respect to the total amount required to cure the default. The notice of default also provided that, should the default not be cured on or before July 31, 2013, the mortgage payments would be accelerated.

When no payments followed, HCSB commenced the present foreclosure action against the defendants on December 4, 2013. HCSB filed the operative complaint, its third revised complaint, on June 29, 2016. On January 20, 2017, the defendants filed an answer that included thirteen special defenses, alleging, inter alia, that (1) HCSB lacked the right or capacity to maintain the action as a corporation, (2) HCSB lacked standing, (3) the assignment of the note and mortgage was not actual and bona fide, (4) BANA's conduct with respect to the mortgage constituted unclean hands, and (5) HCSB was estopped from enforcing the mortgage.

On August 4, 2017, HCSB moved for summary judgment as to liability, arguing that there was no genuine issue of material fact with respect to the defendants' liability on the note and mortgage. Attached to that motion was the affidavit of Regina Rhodes. In the Rhodes affidavit, the affiant averred, in relevant part,

that (1) she was authorized to sign the affidavit on behalf of HCSB as an assistant vice president for BANA, (2) BANA maintained records for the loan in question, and part of her responsibilities was to be familiar with the types of records maintained by BANA in connection with the loan, (3) she had personal knowledge of BANA's procedures for creating the records, (4) as of May 22, 2007, the defendants owed $532,000 as evidenced by the note payable to BANA, (5) on or before November 25, 2013, HCSB "became and at all times since then has been the party entitled to collect the debt evidenced by the [n]ote and is the party entitled to enforce the [m]ortgage securing the debt," (6) the note and mortgage are in default for nonpayment as of September 1, 2011, (7) the defendants were given notice of default, "by certified mail, postage fully prepaid," on June 21, 2013, and (8) HCSB "directly or through an agent, has possession of the promissory note. [HCSB] is the assignee of the security instrument for the referenced loan." Accompanying the Rhodes affidavit were copies of the note, a June 21, 2013 notice of default addressed to the defendants, a quitclaim deed of the property, the mortgage, the assignment of the note and mortgage from BANA to HCSB, and a June 2, 2013 notice addressed to the defendants that contained information pursuant to §§ 8-265cc through 8-265kk.

After being granted an extension of time to respond, the defendants filed their opposition to HCSB's motion for summary judgment on October 27, 2017. In support of their opposition, the defendants submitted the affidavit of the defendant Charles D. Hellman. In that affidavit, Charles D. Hellman averred that, during 2012, BANA repeatedly stated that it no longer owned the "loan" and mortgage, and refused to reveal the identity of the new owner. He further averred, in relevant part, that (1) HCSB failed to establish that notice of default was delivered to the defendants as a condition of the mortgage due to Rhodes averring that HCSB had sent notice by certified mail without proof of receipt and (2) he could no longer find any physical branches of HCSB in Connecticut which "raise[d] questions as to [HCSB's] existence and status as a real party in interest in this matter."

On October 30, 2017, the court, *Randolph, J.*, held a hearing on the motion for summary judgment and heard arguments from both parties. Three days later, the court granted HCSB's motion for summary judgment as to liability. In its order, the court found that no genuine issue of material fact existed as to the defendants' liability and that the defendants' special defenses and affidavit were insufficient to rebut HCSB's prima facie case.

On November 28, 2017, HCSB filed a motion to substitute M&T as the plaintiff, pursuant to Practice Book §§ 9-16 and 9-23.[4] In support of its motion, HCSB attached a copy of a certificate of effectiveness that

evidenced that, as of November 1, 2015—approximately twenty-one months before HCSB filed its motion for summary judgment as to liability—HCSB had merged into M&T.[5] Over the defendants' opposition, the court, *Lee, J.*, granted that motion on December 11, 2017. On February 26, 2018, the court, *Randolph, J.*, rendered judgment of foreclosure by sale in favor of M&T, ordering that a sale of the property be held on June 23, 2018. On March 6, 2018, notice of judgment of foreclosure by sale was sent to the defendants. This appeal followed.[6]

## I

We first address the defendants' claim that the court improperly granted HCSB's motion to substitute M&T as the plaintiff. According to the defendants, substituting M&T as the plaintiff impeded their ability to properly oppose HCSB's motion for summary judgment and obtain proper discovery from M&T. In response, M&T asserts that the defendants were not prejudiced because the substitution had no substantive effect. We agree with M&T.

"Practice Book § 9-16 confers authority on a trial court judge to substitute a new plaintiff as the sole plaintiff in a pending action as long as the substitution does not prejudice the defense of the action. The decision whether to grant a motion for the [substitution] of a party to pending legal proceedings rests generally in the sound discretion of the trial court. . . . Our review is limited to a determination of possible abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Trevek Enterprises, Inc.* v. *Victory Contracting Corp.*, 107 Conn. App. 574, 578–79, 945 A.2d 1056 (2008). "In reviewing the trial court's exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness . . . and only if its action discloses a clear abuse of discretion is our interference warranted." (Internal quotation marks omitted.) *Joblin* v. *LaBow*, 33 Conn. App. 365, 367, 635 A.2d 874 (1993), cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994).

"Our rules of practice . . . permit the substitution of parties as the interests of justice require." *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.*, 31 Conn. App. 80, 84, 623 A.2d 517, cert. denied, 226 Conn. 908, 625 A.2d 1378 (1993). "As long as [the] defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added . . . ." (Internal quotation marks omitted.) *Rana* v. *Terdjanian*, 136 Conn. App. 99, 110, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012).

We begin by noting that the defendants' claim appears to be centered on the merger of HCSB into M&T and how that merger eventually came to light. The defen-

dants assert that they were prejudiced by the substitution due to the fact that the motion to substitute was filed more than two years after the merger took effect and more than three months after HCSB filed for summary judgment. According to the defendants, the timing of these events (1) misled both themselves and the court, (2) circumvented HCSB's obligation to show it was entitled to seek judgment, and (3) impeded their ability to oppose the motion for summary judgment because the merger contradicted the averments made in the Rhodes affidavit.

Guiding our resolution of the defendants' claim are the statutory and legal principles governing the mergers of banking institutions. In *Financial Freedom Acquisition, LLC* v. *Griffin*, 176 Conn. App. 314, 170 A.3d 41, cert. denied, 327 Conn. 931, 171 A.3d 454 (2017), this court provided a comprehensive discussion of how a foreclosure action is affected when a plaintiff bank merges into another banking institution during the pendency of the action.[7] In that case, this court explored federal and Connecticut banking law—as well as Connecticut corporate law—to resolve the consequences of the plaintiff's merger and name change during the pendency of the action in which the new entity was never substituted as the plaintiff. See id., 322–33. In so doing, this court noted that, "[a]lthough Connecticut banking law applies only to banks organized under Connecticut law . . . it provides guidance for determining the impact of a merger of banking entities. . . . With respect to a banking merger resulting in a Connecticut bank, Connecticut law provides that (1) the corporate existence of the constituent banks shall be continued by and in the resulting bank; (2) the entire assets . . . of each of the constituent banks shall be vested in the resulting bank without any deed or transfer; (3) [n]o suit, action or other proceeding pending at the time of the merger . . . before any court or tribunal in which any of such constituent banks is a party shall be abated or discontinued because of such merger . . . but may be continued and prosecuted to final effect by or against the resulting bank; and (4) [t]he resulting bank shall have the right to use the name of any of the constituent banks . . . . General Statutes § 36a-125 (g)." (Citations omitted; internal quotation marks omitted.) *Financial Freedom Acquisition, LLC* v. *Griffin*, supra, 327–28.

"With federal and state banking law in mind, we seek additional guidance from the corporate law of this state and other jurisdictions relating to mergers and changes of name of *nonbanking* entities. In a merger of corporations governed by Connecticut law . . . the name of the survivor *may, but need not be,* substituted in any pending proceeding for the name of any party to the merger whose separate existence ceased in the merger. . . . General Statutes § 33-820 (a) (5). . . .

\* \* \*

"The Uniform Limited Liability Company Act similarly provides that all property of each merging entity vests in the surviving entity and that the name of the surviving entity may be substituted for the name of any merging entity that is a party to any pending action or proceeding . . . . The rationale behind not requiring the substitution of the surviving entity's name in a pending proceeding is that [s]uch a substitution has no substantive effect because, whether or not the survivor's name is substituted, the survivor succeeds to the claims of any party to the merger whose separate existence ceased as a result of the merger. . . .

\* \* \*

"Under the relevant federal and state authority, the merger to which the substitute plaintiff was [a] party had the following consequences. First, the substitute plaintiff's corporate existence and identity continued in the resulting bank. . . . Second, the substitute plaintiff's assets, including the [defendants'] note, vested in the resulting bank by operation of law and without any deed or transfer. . . . Third, the present action, which was pending at the time of the merger's consummation, was not abated, discontinued, or otherwise affected. . . . Last, the substitute plaintiff could have substituted the resulting bank in this action, but it was not required to do so." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Financial Freedom Acquisition, LLC* v. *Griffin*, supra, 176 Conn. App. 331–33.

Relevant to the present matter is the governing principle that M&T was not required to be substituted as the plaintiff in place of HCSB. The rationale behind this discretion afforded to substituting the surviving legal entity as the plaintiff in a pending action is a matter of practicality: "[S]uch a substitution has no substantive effect" because, irrespective of the substitution, the surviving entity succeeds all claims and assets. (Internal quotation marks omitted.) Id., 331. We are further guided by this state's policy concerning intervention of right. Practice Book § 9-18 provides in relevant part: "If a person not a party has an interest or title which the judgment will affect, the judicial authority, on its motion, shall direct that person to be made a party. . . ." See generally *Investors Mortgage Co.* v. *Rodia*, 31 Conn. App. 476, 480 and n.3, 625 A.2d 833 (1993).

With these principles in mind, we conclude that the court did not abuse its discretion when it granted the motion to substitute M&T as the plaintiff. In reaching this determination, we note that the motion at issue was predicated in part on Practice Book § 9-16, a section that provides for the substitution of a plaintiff when the cause of action itself is assigned to a different party. Attached to the motion to substitute was both a certifi-

cate from the New York State Department of Financial Services and a certification of the certificate of effectiveness evidencing that the merger became effective on November 1, 2015. However, no assignment of the underlying cause of action occurred because, importantly, no assignment was necessary. The merger of HCSB into M&T caused HCSB's assets—including the note and the cause of action against the defendants—to vest in M&T by operation of law. See *Financial Freedom Acquisition, LLC* v. *Griffin*, supra, 176 Conn. App. 326 ("[a]ll rights . . . in and to every type of property . . . and choses in action shall be transferred to and vested in the [resulting] national banking association by virtue of such consolidation [or merger] without any deed or other transfer" (emphasis omitted; internal quotation marks omitted)). Although § 9-16 calls for the substitution of a party upon that party's assignment of the cause of action, it was an appropriate vehicle to bring about the substitution of M&T, who was the real party of interest upon its merger with HCSB.[8]

In addition, we disagree with the defendants that the substitution of M&T prejudiced them. First, we acknowledge that both the defendants and the court were misled by the failure to substitute M&T as the plaintiff for more than two years after the merger occurred. While it is clear that the substitution does not affect M&T's rights it assumed by virtue of the merger, the failure to put the parties and the court on notice that M&T assumed the rights of HCSB was, at a minimum, careless. Indeed, it is possible that this type of neglectful practice could be the basis for a myriad of prejudices that a defendant could face by virtue of not knowing who the proper plaintiff is. Nevertheless, there is no basis for finding prejudice here, and the defendants do not articulate how being misled in this instance caused actual prejudice to their ability to defend against the claims brought against them.

Second, M&T's obligation to establish its prima facie case was not circumvented because, like HCSB—whose corporate existence continued by and in M&T after the merger became effective—it had the identical burden subsequent to the merger. In other words, M&T carried the same burden in obtaining summary judgment as HCSB once the merger became effective. The merger of HCSB into M&T did not obviate the burden of either HCSB or M&T to establish a prima facie case.

Lastly, we do not believe that the substitution of M&T hindered the defendants' ability to defend themselves in this action. Under established law, the substitution of M&T as the plaintiff was not necessary after its merger with HCSB. See id., 333 (plaintiff could have substituted resulting bank as plaintiff in action after merger, but was not required to do so). Moreover, the failure of M&T to substitute itself prior to HCSB's motion for summary judgment did not preclude the

defendants from obtaining discovery on any of the issues that were pertinent to opposing that motion. Accordingly, the court did not abuse its discretion when it granted HCSB's motion to substitute M&T as the plaintiff.

## II

We turn next to the defendants' claim that the court improperly rendered summary judgment as to liability in HCSB's favor. Specifically, the defendants argue that HCSB, as the former plaintiff, (1) failed to establish that it possessed the note at the time the action was commenced, and (2) failed to establish that no genuine issue of material fact existed regarding whether it satisfied a condition precedent to foreclosure. We agree with the defendants' second argument.[9]

The legal principles and standard of review governing our resolution of this claim are well settled. "On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [plaintiff] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) *U.S. Bank, N.A.* v. *Foote*, 151 Conn. App. 620, 630–31, 94 A.3d 1267, cert. denied, 314 Conn. 930, 101 A.3d 952 (2014).

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage,

have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Aubut*, 167 Conn. App. 347, 359, 143 A.3d 638 (2016).

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 319–20, 77 A.3d 726 (2013).

### A

The defendants first argue that HCSB, as the former plaintiff, failed to establish the existence of standing. Specifically, the defendants argue that the Rhodes affidavit only provides that HCSB was in possession of the note when it commenced the foreclosure action. According to the defendants, the Rhodes affidavit is silent as to when HCSB came into possession of the note, and the averment that HCSB was entitled to enforce the note on or before November 25, 2013, was conclusory. In response, M&T asserts that HCSB provided more than sufficient evidence to establish that it possessed the note at the time it commenced the action. We agree with M&T.

We begin by noting that, although our standard of review of the granting of summary judgment is plenary; see *Wells Fargo Bank, N.A.* v. *Henderson*, 175 Conn. App. 474, 481, 167 A.3d 1065 (2017); the defendants here challenge the summary judgment on the basis that HCSB failed to establish that it possessed the note at the time it commenced the underlying action. In the context of foreclosure actions, whether a plaintiff possesses the relevant note at the time the action is com-

menced implicates that plaintiff's standing. See *Deutsche Bank National Trust Co.* v. *Cornelius*, 170 Conn. App. 104, 110–11, 154 A.3d 79 ("[g]enerally, in order to have standing to bring a foreclosure action the plaintiff must, *at the time the action is commenced*, be entitled to enforce the promissory note that is secured by the property" (emphasis in original; internal quotation marks omitted)), cert. denied, 325 Conn. 922, 159 A.3d 1171 (2017); *Deutsche Bank National Trust Co.* v. *Thompson*, 163 Conn. App. 827, 832, 136 A.3d 1277 (2016) ("[i]f the plaintiff did not hold the note at the time it commenced this [foreclosure] action, then it would have lacked standing and the case must be dismissed").

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Caldrello*, 192 Conn. App. 1, 20, 219 A.3d 858, cert. denied, 334 Conn. 905, 220 A.3d 37 (2019).

"The rules for standing in foreclosure actions when the issue of standing is raised may be succinctly summarized as follows. When a holder seeks to enforce a note through foreclosure, the holder must produce the note. The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer. If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt had passed to another party. It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that might give rise to the possibility that some other party owns the debt. In order to rebut the presumption, the defendant must prove that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Henderson*, supra, 175 Conn. App. 483.

"Appellate courts in this state have held that the

burden [of showing that a plaintiff owns the note] is satisfied when the mortgagee includes in its submissions to the court a sworn affidavit averring that the mortgagee is the holder of the promissory note in question at the time it commenced the action. . . . The evidentiary burden of showing the existence of a disputed material fact then shifts to the defendant. It is for the maker of the note to rebut the presumption that a holder of the note is also the owner of it." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 392, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014). Furthermore, "[t]he possession by the bearer of a note [e]ndorsed in blank imports prima facie that [it] acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes [its] case prima facie against the makers and [it] may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 135, 74 A.3d 1225 (2013).

In support of its motion for summary judgment, HCSB attached to its motion three pertinent documents establishing that it was the holder of the note at the time it commenced the underlying foreclosure action. First, the Rhodes affidavit unequivocally states the following: (1) Rhodes, as the affiant, is an officer of BANA; (2) BANA is the servicing agent for HCSB for the underlying debt; (3) Rhodes has personal knowledge of BANA's records maintained in connection with the debt; (4) these records are "made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge"; (5) the records are "kept in the course of BANA's regularly conducted business activities"; (6) "it is the regular practice of BANA to make such records"; (7) "[o]n or before November 25, 2013, [HCSB] became and at all times since then has been the party entitled to collect the debt evidenced by the [n]ote and is the party entitled to enforce the [m]ortgage securing the debt"; and (8) "[HCSB] . . . has possession of the [note]." Second, a copy of the note, endorsed in blank, was attached as an exhibit to HCSB's motion and the original was presented to both the court and the defendants during a hearing on the motion. Lastly, a copy of the assignment of the note and mortgage from BANA to HCSB, which was also attached to HCSB's motion as an exhibit, clearly shows that the assignment was executed on January 7, 2013—more than ten months prior to HCSB's commencing the foreclosure action.[10]

As our Supreme Court has made clear, HCSB's production of the note established a rebuttable presump-

tion that it possessed the note at the time it commenced the foreclosure action. See *Equity One, Inc.* v. *Shivers*, supra, 310 Conn. 135. The production of the note, by itself, "establishe[d] [HCSB's] case prima facie" with respect to its standing. Id. (Internal quotation marks omitted.) In the absence of the defendants' offering any evidence of their own to rebut the presumption that HCSB owned the note when it commenced the underlying foreclosure proceedings, HCSB was not required to do anything more. See id. (because plaintiff did not need to do more to prove standing than simply present note endorsed in blank, defendant was not entitled to evidentiary hearing on that issue). In the present case, the note—endorsed in blank—was attached as an exhibit to the Rhodes affidavit submitted in support of HCSB's motion for summary judgment.[11] On October 30, 2017, HCSB again produced the original note and presented it to the court. Thus, the production of the note—both as an exhibit to the Rhodes affidavit and at the hearing—established a rebuttable presumption that HCSB possessed the note at the time it commenced the foreclosure action. See id. ("[t]he production of the note [endorsed in blank] establishes [the plaintiff's] case prima facie against the makers and [it] may rest there" (internal quotation marks omitted)).

In response, the only evidence offered by the defendants to rebut that presumption was in the form of the Hellman affidavit. In that affidavit, the defendant Charles D. Hellman averred, in relevant part, that (1) prior to the commencement of the foreclosure action, BANA represented to the defendants that it did not own the note prior to the date of assignment, which raised doubts about its ability to assign the note and mortgage, and (2) he could no longer find any physical HCSB bank branches, which raised doubt as to HCSB's existence. These averments in no way undercut HCSB's showing that it had standing. First, whether BANA had the power to assign the note and mortgage—therefore implicating whether HCSB was the proper holder of the note—goes to the merits of the foreclosure action, "not [HCSB's] standing to bring the action." *Wells Fargo Bank, N.A.* v. *Strong*, supra, 149 Conn. App. 400. Second, the averment that the affiant could not find any physical HCSB bank branches is merely a bald assertion that, by itself, is not evidence that calls into doubt HCSB's existence.[12] See *Property Asset Management, Inc.* v. *Lazarte*, 163 Conn. App. 737, 746–47, 138 A.3d 290 (2016) (after plaintiff presents prima facie evidence that it has standing, "the burden is on the defendant to impeach the validity of [the] evidence that [the plaintiff] possessed the note at the time that it commenced the . . . action . . . [and must] prove the facts which limit or change the plaintiff's rights" (internal quotation marks omitted)).

Despite failing to rebut the presumption that HCSB had standing by virtue of its production of the note, the defendants assert that HCSB did not submit evi-

dence that establishes it possessed the note at the time it commenced the action. As discussed previously, HCSB had no obligation to do so because (1) it produced the note endorsed in blank and (2) the defendants failed to offer evidence to rebut the presumption that HCSB possessed the note at the time it commenced the foreclosure action. Even if we assume otherwise, the defendants' contention is without merit. The record shows that HCSB submitted evidence clearly demonstrating that it was in possession of the note on December 4, 2013—the date on which it commenced the underlying action. For instance, the Rhodes affidavit specifically averred that, "[o]n or before November 25, 2013, [HCSB] became and *at all times since* then has been the party entitled to collect the debt evidenced by the [n]ote and is the party entitled to enforce the [m]ortgage securing the debt." (Emphasis added.) More significantly, a copy of the assignment of the note was affixed to the Rhodes affidavit as an exhibit. That assignment conclusively shows that HCSB came into possession of the note by way of an assignment from BANA on January 7, 2013— more than ten months before HCSB commenced the foreclosure proceedings against the defendants. The Rhodes affidavit and the assignment, both submitted in tandem with the note endorsed in blank, "was prima facie evidence that [HCSB] was the holder of the note at the relevant time and thus was entitled to enforce the note." *US Bank National Assn.* v. *Christophersen*, 179 Conn. App. 378, 385, 180 A.3d 611, cert. denied, 328 Conn. 928, 182 A.3d 1192 (2018).

In sum, the record clearly demonstrates that HCSB satisfied its prima facie case that it had standing. Its production of the note, endorsed in blank, established a rebuttable presumption that it possessed the note at the time it commenced the foreclosure action. Because the defendants failed to offer evidence to rebut that presumption, HCSB was not obligated to provide anything further to show that it had standing to enforce the note. Yet, HCSB did precisely that. Its submissions of the note endorsed in blank, the Rhodes affidavit, and the assignment of the note established that it possessed the note at the time it commenced the underlying action. Accordingly, we conclude that M&T has standing.

B

The defendants next argue that there was a genuine issue of material fact as to whether HCSB satisfied a condition precedent to foreclosure. In particular, the defendants highlight HCSB's obligation under the mortgage to provide the defendants with notice of default before exercising its option to accelerate. The defendants assert that, because the Rhodes affidavit states that the notice was sent by certified mail, and, because HCSB provided no evidence that notice was sent by first class mail or that it was received by the defendants, HCSB failed to satisfy a condition precedent to foreclo-

sure. M&T maintains that, although the Rhodes affidavit states that the notice was sent by certified mail, the copy of the envelope annexed to that affidavit shows that it was sent by regular mail due to the markings and number notations. Accordingly, M&T argues that the evidence sufficiently establishes that HCSB sent the notice of default by regular mail and it therefore satisfied all conditions precedent prior to commencing the foreclosure action. We agree with the defendants.

The following legal authority and standard of review govern our resolution of this dispute as to notice. "It is well established that [n]otices of default and acceleration are controlled by the mortgage documents. Construction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. . . . In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Moreover, the words [in the deed] are to be given their ordinary popular meaning, unless their context, or the circumstances, show that a special meaning was intended. . . .

"In construing a contract, the controlling factor is normally the intent expressed in the contract, not the intent which the parties may have had or which the court believes they ought to have had. . . . Where . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous. . . . Ordinarily, such ambiguity requires the use of extrinsic evidence by a trial court to determine the intent of the parties, and, because such a determination is factual, it is subject to reversal on appeal only if it is clearly erroneous."[13] (Citations omitted; internal quotation marks omitted.) *Aurora Loan Services, LLC* v. *Condron*, 181 Conn. App. 248, 264–65, 186 A.3d 708 (2018).

Turning to the mortgage at issue here, section 22 provides in relevant part that the "[l]ender shall give notice to [the borrower] prior to acceleration following [the borrower's] breach of any covenant or agreement in this [s]ecurity [i]nstrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than [thirty] days from the date the notice is given to [the borrower], by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this [s]ecurity [i]nstrument and foreclosure or sale of the

[p]roperty." Section 15 of the mortgage governs the manner in which notices are to be given. That section provides in relevant part that "[a]ll notices given by [the borrower] or [the lender] in connection with this [s]ecurity [i]nstrument must be in writing. Any notice to [the borrower] in connection with this [s]ecurity [i]nstrument shall be deemed to have been given to [the borrower] when mailed by first class mail or when actually delivered to [the borrower's] notice address if sent by other means." Because such language creates a condition precedent to commencing a foreclosure action, HCSB was thus required to give the defendants actual notice of the relevant information, with the defendants presumptively in receipt of that notice only if it was sent by first class mail.

We believe that *Condron* is instructive in this regard. In that case, this court addressed a similar claim concerning the satisfaction of a condition precedent when a notice of default is sent to a borrower by certified mail. Like the present case, the mortgage at issue in *Condron* contained a condition precedent that notice of default be sent to a borrower, and that such notice will be deemed given to the borrower if sent by first class mail. *Aurora Loan Services, LLC* v. *Condron*, supra, 181 Conn. App. 263–64. That mortgage also provided that, if the notice of default was sent by other means, then notice would be given to the borrower only if it was "actually delivered" to the borrower's address. (Emphasis omitted; internal quotation marks omitted.) Id., 264. In moving for summary judgment, the plaintiff bank in *Condron* provided evidence that the notice of default was sent by certified mail, but provided no evidence that the notice was actually delivered to the defendants. Id. Looking to the unambiguous language of the mortgage and the evidence presented to the trial court, this court held that the plaintiff failed to satisfy a condition precedent to foreclosure. Id., 273. In reaching that determination, the court summarized the "critical difference" between certified mail and first class mail in the context of satisfying the requirements of a mortgage. Id., 266–70. Because the plaintiff "failed to submit a return receipt or any other evidence into the record to prove that the notice of default was actually delivered to the defendants by certified mail," it therefore failed to satisfy its burden of proof that it complied with the notice requirements of the mortgage. Id., 273.

In the present case, the only documents submitted by HCSB that the notice of default was given to the defendants consisted of (1) the Rhodes affidavit and (2) a copy of the notice itself. As discussed previously, the Rhodes affidavit that was submitted by HCSB in support of its motion for summary judgment makes only one reference to the notice of default. Specifically, the Rhodes affidavit states that "[n]otice of default was given to [the defendants] on June 21, 2013 . . . . The [n]otice was given by certified mail, postage fully pre-

paid, was addressed as set forth on the attached [e]xhibit A-2. As set forth in [e]xhibit A-2, among other things, the [n]otice specified the default, the action required to cure the default and a date by which the default had to be cured." HCSB submitted no documents to authenticate exhibit A-2 as purporting to be a notice of default sent by first class mail, nor did it provide any documentation showing that the notice of default was actually delivered to the defendants.

In resolving this issue, we reiterate that our plenary review of a court's decision granting summary judgment is limited to whether "the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact" when that evidence is viewed "in the light most favorable to the nonmoving party."[14] (Internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 773, 176 A.3d 1 (2018). Moreover, our law is well settled that a court is limited to considering documents that would be admissible at trial. *New Haven* v. *Pantani*, 89 Conn. App. 675, 678, 874 A.2d 849 (2005). Thus, "[b]efore a document may be considered by the court [in support of] a motion for summary judgment, there must be a preliminary showing of [the document's] genuineness, i.e., that *the proffered item of evidence is what its proponent claims it to be.*" (Emphasis added; internal quotation marks omitted.) *Gianetti* v. *Health Net of Connecticut, Inc.*, 116 Conn. App. 459, 466, 976 A.2d 23 (2009).

On our review of the record, viewed in the light most favorable to the defendants, we conclude that HCSB did not meet its burden of showing that it satisfied a condition precedent to foreclosure. The Rhodes affidavit states that the notice of default was "given by certified mail, postage fully prepaid, was addressed as set forth on the attached [e]xhibit A-2." That exhibit contains a scanned copy of the envelope addressed to the defendants and the notice of default. However, nothing from that exhibit provides any indication that the notice of default was actually delivered to the defendants if sent by certified mail. Although M&T argues that the scanned envelope contained in the exhibit is evidence that the notice of default was sent by first class mail, it is not accompanied by an affidavit authenticating it as such. See *New Haven* v. *Pantani*, supra, 89 Conn. App. 678 (documents not authenticated by, for example, either affidavit or certified copy, are not admissible evidence to establish plaintiff's prima facie burden for summary judgment). Instead, it was accompanied by the Rhodes affidavit which averred that the document constituted notice by certified mail. As we have discussed previously, under *Condron*, the absence of any indication that the certified mail notice was actually delivered is fatal. M&T's claim that the document actually represents evidence of first class mail also fails because it lacks an authenticating document to support the claim that it is what M&T purports it to be. See id.,

680 (plaintiff failed to establish prima facie case for summary judgment because documents submitted were not authenticated).

Despite these deficiencies in its documentation, M&T raises a number of arguments that the evidence was sufficient to satisfy its burden for summary judgment. First, M&T claims that HCSB consistently asserted that the notice of default was sent by regular mail. Specifically, it cites to the allegation in the operative complaint that states that "[HCSB] has complied with all statutory and contractual preconditions prior to commencing this foreclosure action including issuance of a written notice of default, sent first class mail, postage prepaid on or about June 21, 2013 to the defendants . . . ." M&T, however, fails to explain how that allegation is anything but *inconsistent* with the Rhodes affidavit that HCSB submitted as evidence in support of summary judgment.[15]

Second, M&T argues that, despite the averment made in the Rhodes affidavit that the notice of default was sent by certified mail, the barcode and accompanying numbers contained on the envelope is evidence that the notice was "quite obviously sent by regular mail . . . ." We have no way to discern what the barcode and the numbers represent for purposes of determining how the envelope was mailed, nor was any evidence submitted to the court that explained these features on the envelope. Although counsel for M&T has assured us that the barcode and numbers represent that it was sent by first class mail, such representations are not admissible evidence. See, e.g., *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 652 n.12, 127 A.3d 257 (2015) ("[t]his court, as well as our Supreme Court, repeatedly has stated that representations of counsel are not evidence" (internal quotation marks omitted)). Moreover, M&T's reference to website links purporting to show the United States Postal System's certified mail number system was not evidence before the trial court, and we therefore do not consider it on appeal. *Fiorelli* v. *Gorsky*, 120 Conn. App. 298, 307 n.3, 991 A.2d 1105 (evidence that was not before trial court when it decided motion for summary judgment will not be considered on appeal), cert. denied, 298 Conn. 933, 10 A.3d 517 (2010).

Lastly, in an attempt to distinguish *Condron*, M&T notes that, (1) unlike in that matter, in this case, HCSB claimed that it sent the notice of default by both certified mail and first class mail, and (2) the defendants in *Condron* provided evidence that they "affirmatively did receive the notice of default . . . ." (Emphasis omitted.) For all intents and purposes, M&T's initial argument is a distinction without a difference that has no influence on our application of *Condron* to the present facts. M&T's latter argument fails for the same reason. Not only did the defendants in *Condron* affirmatively

state that they *did not* receive notice, but most importantly, at issue was the plaintiff's failure to satisfy its burden that the defendants "actually received the notice of default." *Aurora Loan Services, LLC* v. *Condron*, supra, 181 Conn. App. 264, 276. Compare *Wells Fargo Bank, N.A.* v. *Fitzpatrick*, 190 Conn. App. 231, 241–42, 210 A.3d 88 (*Condron* is distinguishable because defendants indisputably "had actual notice of the default and the possibility that they faced a foreclosure because they had been through [a] first foreclosure action and admittedly received the [notice of default] before the first foreclosure action was commenced"), cert. denied, 332 Conn. 912, 209 A.3d 1232 (2019). M&T likewise has failed to satisfy its burden that the defendants actually received the notice of default, and the defendants therefore had no obligation to establish that a genuine issue existed as to that material fact. See *State Farm Fire & Casualty Co.* v. *Tully*, 322 Conn. 566, 573, 142 A.3d 1079 (2016) (when evidence submitted by moving party fails to establish no genuine issue of material fact, nonmoving party has no obligation to submit evidence establishing existence of issue).

Accordingly, we conclude that the evidence submitted by HCSB failed to show that it satisfied a condition precedent to foreclosure. HCSB did not submit any evidence to prove that the notice of default was actually delivered to the defendants, and no admissible evidence exists to support the claim that the notice of default was sent by first class mail. Therefore, the court improperly determined that M&T satisfied its burden of proof to establish that HCSB complied with the notification requirements pursuant to the mortgage.

The judgment is reversed and the case is remanded with direction to deny the motion for summary judgment and for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] For convenience, we refer to Charles D. Hellman and Holly H. Hellman as the defendants in this opinion. We further note that in this action, Charles D. Hellman, a licensed attorney, represents both himself and Holly H. Hellman.

Bank of America, N.A., was also named as a defendant in the complaint for its claimed interest in the property by way of a mortgage dated October 28, 2002; it has not participated in the present appeal.

[2] As discussed herein, at the time that the foreclosure action was commenced, HCSB was the plaintiff preceding M&T. The motion to substitute was precipitated by HCSB's merger with M&T, effective November 1, 2015. HCSB was also the named plaintiff at the time summary judgment was rendered in its favor, which preceded the motion to substitute M&T as the plaintiff. For purposes of clarity, we refer to M&T and HCSB by name.

[3] On February 8, 2004, the defendant Holly H. Hellman became the owner of the Westport property by way of a quitclaim deed.

[4] Practice Book § 9-16 provides that, "[i]f, pending the action, the plaintiff assigns the cause of action, the assignee, upon written motion, may either be joined as a coplaintiff or be substituted as a sole plaintiff, as the judicial authority may order; provided that it shall in no manner prejudice the defense of the action as it stood before such change of parties."

Practice Book § 9-23 provides that "[a]n action may be brought in all cases in the name of the real party in interest, but any claim or defense may be set up which would have been available had the plaintiff sued in

the name of the nominal party in interest."

[5] The record provides no indication that either the court or the defendants were aware that HCSB had merged into M&T some two years prior to the motion to substitute being filed.

[6] On May 1, 2018, the court granted M&T's motion for termination of the automatic stay of execution on appeal. On July 23, 2018, this court denied the defendants' motion to vacate the trial court's termination of the automatic appellate stay.

[7] Given the complicated background of *Financial Freedom Acquisition, LLC* v. *Griffin*, supra, 176 Conn. App. 314, we believe it to be helpful to provide the facts of that case. The following summary provides an overview.

The decedent, whose estate was named as a defendant, executed a note secured by a mortgage in July, 2008, and both were eventually assigned to OneWest Bank, F.S.B. Id., 317, 320. OneWest Bank, F.S.B. then assigned the note to the plaintiff, an entity that was a subsidiary of OneWest Bank, F.S.B. Id., 320. In May, 2011, the plaintiff instituted the foreclosure action against the defendants. Id., 321. In July, 2011, the plaintiff transferred the note and mortgage back to OneWest Bank, F.S.B. Id., 320. In February, 2014, OneWest Bank, F.S.B. changed its name to OneWest Bank, N.A. after converting from a federal savings bank to a national banking association. Id. In September, 2014, OneWest Bank, N.A. was substituted as the plaintiff. Id., 321. In August, 2015, IMB HoldCo, LLC, the holding company of OneWest Bank, N.A., merged with CIT Group, the holding company of CIT Bank. Id., 320. As part of the merger, CIT Bank merged into OneWest Bank, N.A., and, although the latter was the surviving entity, it changed its name to CIT Bank, N.A. Id., 321. CIT Bank, N.A. was never substituted as the plaintiff in the action. Id.

At trial, OneWest Bank, N.A., as the substitute plaintiff, introduced the original note and an allonge specifically endorsing the note to OneWest, F.S.B., and another allonge wherein OneWest Bank, F.S.B., endorsed the note in blank. Id. OneWest Bank, N.A. also introduced testimony from a vice president and foreclosure litigation manager employed by CIT Bank, N.A., who outlined the series of assignments and corporate restructurings that resulted in CIT Bank, N.A.'s possession of the note. Id., 321–22. Following trial, the court concluded that OneWest Bank, N.A. had established its prima facie case of foreclosure and ruled against the defendants with respect to their special defense and counterclaim. Id., 322. In response to the defendants' motion for articulation concerning which plaintiff owned the loan, the court acknowledged that OneWest Bank, N.A., was then known as CIT Bank, N.A., due to a legal name change. Id. On appeal, the defendants challenged the court's finding that the substitute plaintiff had established its prima facie case, arguing that, as a result of a corporate merger of the substitute plaintiff, ownership of the note had vested in a different legal entity, CIT Bank, N.A., that was never made a party to the action. Id. This court affirmed the trial court's judgment. Id., 343.

[8] Even assuming that Practice Book § 9-16 was not the appropriate basis to bring about the substitution, we underline the wide discretion afforded to courts for the substitution of parties given our state's policy of ensuring that a real party of interest is added as a party to the underlying action.

[9] The defendants also assert that summary judgment was improperly granted because (1) there were genuine issues of material fact as to the validity of the assignment of the note by BANA to HCSB, and (2) more discovery was needed from HCSB as to how it came into possession of the note. Because we conclude that the court improperly granted summary judgment in favor of HCSB, we do not address the defendants' remaining claims.

[10] The assignment, titled "Assignment of Mortgage," clearly assigned the mortgage "together with the note(s) and obligations therein described and the money due and to become due thereon . . . ."

[11] The defendants' claim that there was no basis that the affiant in the Rhodes affidavit had personal knowledge as to HCSB's possession of the note is without merit. Indeed, the averments plainly establish that Rhodes, as the affiant, had personal knowledge of the matters stated therein. See *Bank of America, N.A.* v. *Aubut*, supra, 167 Conn. App. 364–65 (outlining requirements for establishing affiant's personal knowledge when affidavit is submitted in support of summary judgment in foreclosure action).

[12] More importantly, as discussed at length in part I of this opinion, HCSB's existence continued in M&T, and M&T had the right to use the name of HCSB in continuing the underlying foreclosure action. See *Financial Freedom Acquisition, LLC* v. *Griffin*, supra, 176 Conn. App. 328. Thus, HCSB's standing was not affected solely as the result of its merger into M&T.

[13] We note that the record contains no evidence that the intent of the parties in executing the mortgage was an issue before the trial court, nor has that issue been raised on appeal. Moreover, neither party has asserted that any ambiguity exists in the mortgage, nor do we perceive one.

[14] In granting HCSB's motion for summary judgment, the court issued a four sentence order that consisted of the following: "The motion for summary judgment having been heard, it is hereby found that no genuine issue of material fact exists as to the defendants' liability on the note and mortgage. The defendants' special defenses and affidavit are insufficient to rebut [HCSB's] prima facie case. It is therefore ordered GRANTED. Determination of the amount of indebtedness is deferred until such time as [HCSB] seeks a judgment of foreclosure. Practice Book §§ 17-44 through 17-51."

We further note that *Aurora Loan Services*, *LLC* v. *Condron*, supra, 181 Conn. App. 248, was published after the trial court granted HCSB's motion.

[15] M&T's position that it has consistently asserted that the notice of default was sent by first class mail is further undermined by HCSB's representation to the court during the hearing on the motion for summary judgment. In arguing that HCSB satisfied the condition precedent to give notice to the defendants, HCSB's counsel explicitly stated that exhibit A-2 to its motion for summary judgment "shows that [the notice of default] was sent . . . by certified mail . . . ."